**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MICHELE SLAUGHTER,** | : | **Civil No.  3:16-CV-429** |
| | : | |
| **Plaintiff,** | : | |
| | : | **(Judge Nealon)** |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **CAROLYN W. COLVIN** | : | |
| | : | |
| **Defendant.** | : | |

## REPORT AND RECOMMENDATION

## I.    Introduction

This case, which comes before us for judicial review of a determination denying the plaintiff, Michele Slaughter's, claim for Disability Insurance Benefits under Title II of the Social Security Act, presents a series of material factual ambiguities relating to the plaintiff's ability to perform work given limitations imposed by the Administrative Law Judge (ALJ) on her use of her dominant right arm.   Ms. Slaughter's disability application was premised upon an array of physical and emotional limitations, including limitations on her ability to lift and reach with her dominant hand, her right hand.   An examining consulting physician found that Slaughter had severe restrictions in her ability to lift and carry.  (Tr. 363-368.)  Slaughter also testified that she had significant limitations on her ability to lift and carry, especially with her right arm, indicating that she could not lift and

1

carry objects heavier than a loaf of bread.  While the ALJ stated that he gave this evidence only limited weight, (Tr. 18-20), the ALJ's decision appeared to deem these limitations to be both significant and credible, at least with respect to Slaughter's dominant right arm impairment, since the ALJ fashioned a residual functional capacity (RFC) assessment for Slaughter which limited her to light work, "except no overhead work *or use with the right arm*."  (Tr. 16.)(emphasis added.)

The ALJ then presented this residual functional capacity assessment to a vocational expert who testified that there were substantial available positions in the national economy that Slaughter could perform with these right arm limitations. (Tr. 43-45.)   The vocational expert identified three such positions:   poultry eviscerator, bakery worker, and bindery machine feeder.  (Tr.  21, 43-45.)  Yet, while the vocational expert identified these three positions as work that Slaughter could perform with this right arm restriction, the positions identified by the expert required either constant, frequent, or occasional reaching and handling, and the vocational expert further testified that Slaughter could not perform any of these tasks as a right hand dominant person if she was limited in her use of her right hand to reach.  (Tr. 45.)   Despite these material inconsistencies between the vocational expert testimony concerning the ability of Slaughter to perform this

jobs, the Dictionary of Occupational Titles (DOT) exertional standards for these positions, and the ALJ's admonition that Slaughter was limited to light work, "except no overhead work *or use with the right arm,*" (Tr. 16)(emphasis added), the ALJ found based upon the vocational expert testimony that Slaughter could perform substantial jobs in the national economy and concluded that she was not disabled.  (Tr. 21-22.)

On the current factual record, for the reasons set forth below, we are unable to reconcile the ALJ's residual functional capacity assessment, with either the DOT exertional standards for these positions, or the vocational expert testimony, which seems to assert that Slaughter could perform these tasks while also stating at the same time that she could not undertake this work if she is limited in her dominant arm use.  Accordingly, it is recommended that this case be REMANDED for further consideration by the Commissioner.

## II.    **Statement of Facts and of the Case**

On June 13, 2013, Michelle Slaughter applied for disability insurance benefits ("DIB") under Title II of the Social Security Act ("Act"), 42 U.S.C. §§401-434, alleging disability since March 23, 2013, due to depression, anxiety, PTSD, migraine, headaches and a shoulder injury.  (Tr. 117-118, 127.)  At the time of this disability application, Slaughter was approximately 50 years old and was,

therefore, defined as an individual closely approaching advanced age as of the date of the alleged onset of her disability.  (Tr. 20.)  Slaughter is also a right hand dominant individual.  (Tr. 45.)

As part of the disability evaluation process, Slaughter underwent an orthopedic consultative evaluation with Dr. VanGiesen on October 28, 2013. During this examination, Slaughter complained of right shoulder pain and described the pain as constant, sharp and throbbing in nature when she uses her rights arm.  (Tr. 363.)  Slaughter's other presenting complaints were identified as hearing loss, chest pressure, cough, nausea, headache, anxiety, depression, insomnia, memory loss, joint pain and change in appetite and weight gain.  (Tr. 363, 364.)  In his examination, Dr. VanGiesen diagnosed Slaughter with right shoulder pain and impingement with right shoulder bursitis and subacromial biceps tendinitis.  (Tr. 364.)  In an attached medical source statement, Dr. VanGiesen further opined that Slaughter must not lift or carry any weight as lifting causes pain in her right shoulder.  (Tr. 365.)  The doctor also concluded that Slaughter should never use her right hand for reaching, (Tr. 367.), and found that Slaughter must never climb ladders or scaffolds, balance, stoop, kneel, crouch or crawl.  (Tr. 368.)

On February 6, 2015, a hearing was conducted before an ALJ on Slaughter's disability application.  (Tr. 23-46.)  Slaughter testified at this hearing, describing

4

her limitations on her ability to use her right arm to lift, reach, and pull in ways that were consistent with the expert opinion of Dr. VanGiesen, and stated that the heaviest thing she could pick up with her right hand was a loaf of bread. (Tr. 35.)

At this hearing, and in his subsequent decision in this case, the ALJ seemed to credit this evidence which revealed that Slaughter had severe limitations with respect to the use of her right hand and arm. Thus, in questioning a vocational expert, who also testified at this February 6, 2015 hearing, the ALJ fashioned a residual functional capacity (RFC) assessment for Slaughter which limited her to light work, "except no overhead work or use with the right arm." (Tr. 16, 43-44.) The vocational expert then testified that there were substantial available positions in the national economy that Slaughter could perform with these right arm limitations. (Tr. 43-45.) The vocational expert identified three such positions: poultry eviscerator, bakery worker, and bindery machine feeder. (Tr. 21, 43-45.) Yet, while the vocational expert identified these three positions as work that Slaughter could perform, the Dictionary of Occupational Titles, (DOT) which the vocational expert testified she was relying upon in rendering her opinion, described these three jobs in ways which were inconsistent with severe right arm exertional limitations. For example, according to the DOT the position of a poultry eviscerator requires constant reaching and handling. DICOT, 525.687-022. The

job of a bindery machine feeder demands frequent reaching and handling.  DICOT

653.686-026.   Employment as a bakery worker, in turn, demands occasional

reaching and handling.  DICOT 524.687-022.[1]  In her direct testimony to the ALJ

the vocational expert did not reconcile the exertional demands of these three jobs

in terms of reaching and handling with the ALJ's hypothetical question, which

prescribed no use of Slaughter's right arm.  While the vocational expert's direct

testimony contained this latent inconsistency, on cross examination by Slaughter's

counsel, when asked if Slaughter could perform these tasks if she could not reach

with her right hand, the vocational expert testified that if Slaughter was a right

hand dominant individual she could not perform any of these jobs.  (Tr. 45.)  Thus,

cross examination heightened the internal inconsistencies in this opinion evidence.

Following this hearing, on March 6, 2015, the ALJ issued an opinion

denying Slaughter's application for disability benefits.  In that decision, the ALJ

found that Slaughter's shoulder impairments, along with a series of other medical

conditions, were severe impairments at Step 2 of the five step analytical process

which applies to disability claims.  (Tr. 13.)   The ALJ then considered Dr.

---

[1] Constant reaching and handling entails reaching and handling objects for 2/3 or more of the work day; frequent reaching and handling calls for such exertion for between 1/3 and 2/3 of the work day; and occasional reaching and handling necessitates that a worker be able to perform these tasks for up to 1/3 of the work day.  Thus, all of these jobs identified by the vocational expert entail substantial daily reaching and manual skill.

VanGiesen's expert opinion which found that Slaughter had severe restrictions in her ability to lift and carry, (Tr. 363-368.), as well as Slaughter's testimony that she had significant limitations on her ability to lift and carry, especially with her right arm, and that she could not lift and carry objects heavier than a loaf of bread with her right arm.  (Tr. 35.)  While the ALJ stated that he gave this evidence only limited weight and credibility, (Tr. 18-20.), the ALJ's decision also appeared to deem these limitations significant and credible, at least with respect to Slaughter dominant right arm impairment, since the ALJ fashioned a residual functional capacity (RFC) assessment for Slaughter which limited her to light work, "except no overhead work *or use with the right arm*."  (Tr. 16.)(emphasis added.)

The ALJ then found based upon the vocational expert testimony that Slaughter could perform substantial jobs in the national economy, including the jobs of poultry eviscerator, bakery worker, and bindery machine feeder.  On the basis of these findings, the ALJ concluded that Slaughter was not disabled and denied her disability application.  (Tr. 21-22.)  The ALJ's decision did not reconcile the disparity between the vocational expert opinion testimony and the actual exertional demands of the jobs identified by the vocational expert as defined by the Dictionary of Occupational Titles, jobs which were described as requiring constant, frequent or occasional reaching and handling.  The ALJ's decision also

did not address the vocational expert's testimony that a person who could not use her right, dominant, arm could not perform these tasks.

This appeal followed.  (Doc. 1)  This case is fully briefed by the parties, (Docs. 10-12) and is, therefore, ripe for resolution.  While Slaughter has advanced a series of arguments in support of her appeal, we find at the outset that remand is required in this case to resolve the disparities between the ALJ's residual functional capacity assessment which proscribed  "no overhead work or *use with the right arm*," (Tr. 16.)(emphasis added); the DOT exertional standards for the positions identified by the vocational expert, all of which required significant reaching and handling; and the vocational expert testimony, which seemed to assert that Slaughter could perform these tasks while also stating that she could not undertake this work if she is limited in her dominant arm use, the very limitation which the ALJ incorporated into his decision.  Therefore, we do not reach the other claims of error asserted by Slaughter.

## III.   <u>Discussion</u>

### A.   <u>Substantial Evidence Review – the Role of This Court</u>

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in

the record.  See 42 U.S.C. §405(g); 42 U.S.C. §1383(c)(3); Johnson v. Comm'r of

Soc. Sec., 529 F.3d 198, 200 (3d Cir. 2008); Ficca v. Astrue, 901 F.Supp.2d 533,

536 (M.D.Pa. 2012).  Substantial evidence "does not mean a large or considerable

amount of evidence, but rather such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion."  Pierce v. Underwood, 487 U.S. 552,

565 (1988).  Substantial evidence is less than a preponderance of the evidence but

more than a mere scintilla.  Richardson v. Perales, 402 U.S. 389, 401 (1971).  A

single  piece  of  evidence  is  not  substantial  evidence  if  the  ALJ  ignores

countervailing  evidence  or  fails  to  resolve  a  conflict  created  by  the  evidence.

Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993).  But in an adequately

developed  factual  record,  substantial  evidence  may  be  "something  less  than  the

weight of the evidence, and the possibility of drawing two inconsistent conclusions

from the evidence does not prevent [the ALJ's decision] from being supported by

substantial  evidence."   Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620

(1966).  "In determining if the Commissioner's decision is supported by substantial

evidence the court must scrutinize the record as a whole."  Leslie v. Barnhart, 304

F.Supp.2d 623, 627 (M.D.Pa. 2003).  The question before this Court, therefore, is

not whether a plaintiff is disabled, but whether the Commissioner's finding that she

is not disabled is supported by substantial evidence and was reached based upon a

correct application of the relevant law.  See Arnold v. Colvin, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D.Pa. Mar. 11, 2014)("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.")(alterations omitted); Burton v. Schweiker, 512 F.Supp. 913, 914 (W.D.Pa. 1981)("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); see also Wright v. Sullivan, 900 F.2d 675, 678 (3d Cir. 1990)(noting that the scope of review on legal matters is plenary); Ficca, 901 F.Supp.2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

### B.     Initial Burdens of Proof , Persuasion and Articulation for the ALJ

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §1382c(a)(3)(A); see also 20 C.F.R. §416.905(a).  To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy.  42 U.S.C. §1382c(a)(3)(B); 20 C.F.R. §416.905(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. §416.920(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. §416.920(a)(4).

Between steps three and four, the ALJ must also assess a claimant's RFC. RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); see also 20 C.F.R. §§416.920(e), 416.945(a)(1). In making this assessment, the ALJ considers all of the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. §416.945(a)(2).

At steps one through four, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents

11

him or her in engaging in any of his or her past relevant work.   42 U.S.C. §1382c(a)(3)(H)(i)(incorporating 42 U.S.C. §423(d)(5) by reference); 20 C.F.R. §416.912; <u>Mason</u>, 994 F.2d at 1064.

Once this burden has been met by the claimant, it shifts to the Commissioner at step five to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC.  20 C.F.R. §416.912(f); <u>Mason</u>, 994 F.2d at 1064.

The ALJ's disability determination must also meet certain basic substantive requisites.  Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination.   Thus, in order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests."  <u>Cotter v. Harris</u>, 642 F.2d 700, 704 (3d Cir. 1981).  Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence.  <u>Id</u>. at 706-707.  In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is

relying on as the basis for his finding." <u>Schaudeck v. Comm'r of Soc. Sec.</u>, 181 F. 3d 429, 433 (3d Cir. 1999).

**C.**   **<u>Remand is Necessary Here to Address Disparities Between the Vocational Expert Testimony, DOT Exertional Standards, and the ALJ's Residual Functional Capacity Assessment</u>**

As we have noted, it is axiomatic that an ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." <u>Cotter v. Harris</u>, 642 F.2d 700, 704 (3d Cir. 1981).  Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence.  <u>Id.</u> at 706-707.  In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding."  <u>Schaudeck v. Comm'r of Soc. Sec.</u>, 181 F. 3d 429, 433 (3d Cir. 1999).

This bedrock principle of judicial review in the social security disability setting compels a remand of this particular case because there are a series of unresolved, but apparent, internal inconsistencies in the treatment of Slaughter's claim, particularly as it relates to limitations on her use of her right, dominant, arm. On this score, we simply are unable to fully reconcile the decision, and the conflicting testimony offered by the vocational expert in a way which permits a finding that there is substantial evidence that supports this decision.  In particular,

13

we note that there existed significant record evidence which supported a finding of substantial limitations on Slaughter's part in the use of her right arm. This evidence included both Dr. VanGiesen's expert opinion which found that Slaughter had severe restrictions in her ability to lift and carry, (Tr. 363-368.), as well as Slaughter's testimony that she had significant limitations on her ability to lift and carry, especially with her right arm, and that she could not lift and carry objects heavier than a loaf of bread with her right arm. (Tr. 35.)

The ALJ plainly credited this evidence to a significant degree since the ALJ fashioned a residual functional capacity (RFC) assessment for Slaughter which incorporated these restrictions and limited her to light work, "except no overhead work *or use with the right arm*." (Tr. 16.)(emphasis added.) Having fashioned an RFC which, on its face, provided for no use with Slaughter's right arm, the ALJ then received testimony from a vocational expert which stated that there were a significant number of available positions in the national economy that Slaughter could perform with these right arm limitations, and identified three such positions: poultry eviscerator, bakery worker, and bindery machine feeder. (Tr. 21, 43-45.)

This testimony, however, is at odds with the exertional requirements of these three jobs, as defined in the Dictionary of Occupational Titles, since according to the DOT the position of a poultry eviscerator requires constant reaching and

14

handling, DICOT, 525.687-022; the job of a bindery machine feeder demands frequent reaching and handling, DICOT 653.686-026; and employment as a bakery worker demands occasional reaching and handling, DICOT 524.687-022.   The vocational expert never reconciled this apparent inconsistency between the exertional limitations stated by the ALJ in his residual functional capacity assessment and the jobs that the expert testified Slaughter could perform in her direct testimony.   Moreover, in cross examination by Slaughter's counsel, the vocational expert heightened these inconsistencies when she testified that, as a right arm dominant individual Slaughter could not perform any of these tasks if she had significant limitations on the use of her right arm.   Thus, the vocational expert's testimony can be read as simultaneously affirming and denying that Slaughter could perform these tasks given the right arm restrictions identified by the ALJ.

Because of the lack of clarity in the vocational expert's testimony, this unresolved, internal inconsistency found its way into the ALJ's decision denying benefits to Slaughter.   In that decision the ALJ fashioned a residual functional capacity (RFC) assessment for Slaughter which limited her to light work, "except no overhead work or use with the right arm."   (Tr. 16.)   The ALJ then found based upon the vocational expert testimony that Slaughter could perform substantial jobs

in the national economy, including the jobs of poultry eviscerator, bakery worker, and bindery machine feeder.  Yet it appears that none of these jobs can be performed by a person, like Slaughter, who is unable to use her right arm effectively since all of these jobs require either constant, frequent or occasional reaching and handling.  Moreover, in his decision the ALJ did not reconcile the disparity between the vocational expert opinion testimony and the actual exertional demands of the jobs identified by the vocational expert as defined by the Dictionary of Occupational Titles.  The ALJ's decision also did not address the vocational expert's testimony that a person who could not use her right, dominant, arm could not perform these tasks.

Courts have long recognized the potentially disabling effect of a dominant arm impairment.  Where such an impairment exists, but that impairment to a dominant hand or arm has not been adequately addressed, courts have called for remand top the Commissioner for further consideration of the impairments by an ALJ focused upon the fact that the impairment affected the claimant's dominant arm  or hand.  See Money v. Barnhart, 91 F. App'x 210, 216 (3d Cir. 2004)(Appeals Council remands for consideration of dominant hand impairment). See also Troy ex rel. Daniels v. Apfel, 225 F. Supp. 2d 1234, 1240 (D. Colo. 2002); Ortiz v. Sec'y of Health, Ed. & Welfare, 472 F. Supp. 5, 7 (E.D.N.Y. 1979).

Likewise, it is well-settled that a remand to the Commissioner is appropriate when the administrative record discloses an unresolved conflict between a vocational expert's testimony and the provisions of the Dictionary of Occupational Titles, the reference work which the expert relies upon when rendering an opinion.  See Minichino v. Colvin, 955 F. Supp. 2d 366, 380 (M.D. Pa. 2013).  Therefore, when there is a material inconsistency between the vocational expert testimony and the DOT which is unexplained and unacknowledged by either the expert or the ALJ remand is often appropriate.  Boone v. Barnhart, 353 F.3d 203, 209 (3d Cir. 2003).

Here we find that there were unexplained, unresolved and largely unidentified conflicts between the residual functional capacity assessment made by the ALJ, which limited Slaughter  to light work, "except no overhead work *or use with the right arm*," (Tr. 16.)(emphasis added), and the vocational expert testimony, which identified three jobs the expert said Slaughter could perform, all of which had significant reaching and handling requirements.  This internal inconsistency was then compounded by a material conflict between the vocational expert testimony and the DOT standards for these three jobs, which demanded constant, frequent or occasional reaching and handling in these positions.  The vocational expert's testimony then added a third layer of uncertainty to this murky analysis when the expert testified on cross examination that Slaughter could not

17

perform this work if her dominant arm was impaired and unable to reach and pull. Given the inconsistencies between ALJ's description of Slaughter's limitations, the jobs identified in testimony of the vocational expert as work Slaughter could perform, and the actual physical demands of those jobs identified by the expert in the Dictionary of Occupational Titles, the vocational expert's testimony is perfectly ambiguous.  Indeed, that testimony can fairly be read to simultaneously both endorse and refute a claim of disability.  Further, these interlocking, and cascading, internal inconsistencies were material to the determination of this case and they remained unexplained and unacknowledged by either the expert or the ALJ.  On these facts, remand is appropriate for further consideration of this evidence.  Boone v. Barnhart, 353 F.3d 203, 209 (3d Cir. 2003).

Yet, while case law calls for a remand and further proceedings by the ALJ in this case assessing this claim, nothing in our opinion should be construed as suggesting what the outcome of that final and full analysis should be.  Rather, that final assessment of the evidence must await a thorough consideration and development of this evidence.  Further, because we find this basis for remand, we need not address Ms. Slaughter's remaining arguments in this appeal.  To the extent that any other error may exist, it can be remedied on remand following a new administrative hearing.

18

## IV.   **Recommendation**

Accordingly, because we find that the ALJ's decision is not supported by substantial evidence, IT IS RECOMMENDED that the plaintiff's request for a new administrative hearing should be GRANTED, the final decision of the Commissioner denying this claim should be vacated, and this case should be remanded to the Commissioner to conduct a new administrative hearing pursuant to sentence four of 42 U.S.C. §405(g).  IT IS FURTHER RECOMMENDED that final judgment should be entered in favor of the plaintiff and against the Commissioner of Social Security.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record

developed before the magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Failure to file timely Objections to the foregoing Report and

Recommendation may constitute a waiver of any appellate rights.

Submitted this 9th day of February, 2017.


    *s/Martin C. Carlson*
    Martin C. Carlson
    United States Magistrate Judge